Good morning, Your Honors. May it please the Court. My name is June Tan, and I represent the petitioner, Ms. Grace Selfie Tangka. Ms. Tangka is an ethnic Chinese who is living in Indonesia and practicing Christianity. The issues before the Court is just one simple issue. It's whether the immigration judge in the BIA erred in denying Ms. Tangka's application for asylum, application for withholding of removal, and request for protection against the Convention Against Torture Act. Your Honors, the petitioner was able to testify and present documentary evidence that there was a practice of persecution against her and her family. It started in 2009 when she testified that there were rocks and that there were cans that were thrown at her house when they were having prayer services on a weekly basis every Friday night. It further escalated into calls to the family household threatening them that if they were to continue practicing the religion that they would be harmed. The straw that Ms. Tangka's daughter, who was only two and a half years old at the time, was actually kidnapped. And it was during a religious service that they were holding at a public place. They stopped holding these religious services at the house when they received all these threats in 2009 and 2010 and decided to rent a room in a shopping mall in order for them to continue practicing their services. But unfortunately, when Ms. Tangka's daughter was kidnapped, they actually ended up not practicing anymore, and Ms. Tangka brought her daughter and herself here to the United States. Luckily, Ms. Tangka's daughter was miraculously found the following day by her nephew, but the immigration judge and the BIA... What's the evidence that the government is implicated in this, you know, in the kidnapping of the child? Well, Your Honor, you raise a good point in that with these asylum cases, we need to show that the government is failing to protect Ms. Tangka. And in this case, there were country reports that were from the Department of State that demonstrate that these Chinese ethnic minorities are not a majority and that these cases are not prosecuted on a regular basis. Not only that, but the petitioner herself stated in her affidavit, in her testimony, that children are not considered to be lost until 48 hours. Not only that, she stated that if she were to make a complaint or some type of formal report to the police department that it would fall upon deaf ears because they are a minority and they wouldn't do anything. And so, there isn't any... Now, how many Christians are there in Indonesia? I believe that 5% is the makeup... So what, the country has a population of what, 200 million? I'm sorry, Your Honor, it was 200... Does Indonesia have a population of about 200 million? Yes, Your Honor, so 5 per... So that's 10 million. But are you saying that all 10 million Christians could seek asylum in the United States? No, that's not correct. In order to... What's special about that made these people... What's special in this case is, Your Honor, that it's not just the kidnapping itself, but it was all the other events that led up to the kidnapping. So in 2009... Yes, but how is the government... I mean, she apparently lives in a neighborhood that... of Muslims who don't like Christians. But how is the government implicated in the kidnapping or the aftermath of the kidnapping? Your Honor, the government is not directly preventing Ms. Tonka in this case, but it's the lack of policing in the neighborhood. In 2009, she stated that there were rocks thrown at her house, cans thrown at her house with messages and threats. But is there less policing in this neighborhood than in Muslim neighborhoods? I don't know. Isn't that critical? I mean, what if Indonesia just doesn't have very good police, right? Like many countries. So... and that would mean all sorts of people would be... they'd have less protection than they have in the United States. But it wouldn't follow that everybody in the country could come to the United States, right? Well, Your Honor, if we were to follow your argument that there's less protection in Indonesia, because it's not a rich country like the United States, it would mean that the government or the police authority in Indonesia have less police to protect the minorities, which are the Christians. And so even with an inferior... systematically refuses to protect Christians against harassment, persecution, what have you, by their Muslim neighbors, yes, that would certainly be the basis for asylum. But if they just aren't as efficient as police in wealthier countries, not that they provide more protection to Muslims than to Christians, but they don't provide good protection to anybody, isn't that a questionable basis for asylum? It is a questionable basis if we were to just make an argument on one instance, Your Honor. But in this case, the petitioner... they were practicing in their house. They ceased the practice in their house and moved to a public area in a mall so that they could have a little bit more protection by practicing in a public area. But in fact, the public area is where the young daughter was kidnapped. And so the effort on the behalf of the petitioner to try to keep practicing and practice in a safe area... Well, hasn't there been a general finding? I mean, a finding that they either condone it or turn... Violence against Christians? Right. And the State Department's reports in 2010 state on a general basis that the government doesn't do much. They don't necessarily state that they are protecting, but there is a lack of documentary evidence to prove that they are actually protecting. The question goes to Judge Posner's question. Is this a general thing, just bad policing? Or are they, as I say, really focusing on Christians as to the blind eye? Your Honor, there is a reference in the State Department's report that the Christians... There's a Ninth Circuit case, too. Yes, yes, Your Honor. The Ninth Circuit case does make a general finding that Chinese Christians are a... I'm sorry, Your Honor. One second. ...are a class that has been protected. This circuit itself doesn't hold the same view as the Ninth Circuit, but the Ninth Circuit has made the argument... had made the finding that Chinese Christians are a group of minorities that are not protected. And in this circuit, they have made a decision that kidnapping of a loved one is one of the gravest harms possible. In NLA v. Holder, which was a 2014 decision, harm to the applicant's spouse or child constitutes persecution on the primary and seeker itself. And it certainly does. But it seems here that the IJ was dubious that there was a religious connection to the kidnapping. The IJ points out that there was no mention of any connection to their religious practices regarding the kidnapping until... I guess up until the time of the hearing. Specifically towards the kidnapping itself, the IJ did not... It was not mentioned in the application. There was no reference to this anonymous phone call in the husband's statement. Actually, there was reference in the husband's statement. It wasn't as artful as a lawyer would have put it, but the husband does reference the fact that there were phone calls that they received after the kidnapping. And the IJ failed to take the totality of the circumstances as a whole. The previous threats to the household, the phone calls to the house and the kidnapping in itself should have been a nexus to prove that the persecution suffered was on account of the religion of them being Christians practicing in a minority country where the majority are Muslims. Does anyone know what the kidnappers planned to do with the child? Unfortunately, Your Honor, they didn't find out much because remarkably the child was found the following day. And so to know the identity of the kidnappers or to know the motive behind it, it wasn't presented and I think the family was most happy that the child was actually recovered. And, Your Honors, I see my time is up. I'd like to save some time for rebuttal. Thank you. Thank you very much. Ms. Jones? May it please the Court. Good morning. My name is Tracey Jones and I'm appearing on behalf of the respondent, Eric H. Holder, Jr. The Court in this case should deny the petition for review because the petitioner failed to demonstrate eligibility for asylum and withholding of removal and the record does not compel a contrary conclusion. This Court has held that in order to be eligible for asylum and withholding of removal, the petitioner must make two showings. One, past persecution or a well-founded fear of future persecution. And two, the persecution must be on account of a protected ground. Here, the petitioner failed to demonstrate either one of those showings. With regard to the past persecution, the petitioner's past persecution claim rests on threatening phone calls and letters that they received, rocks being thrown at their house, and the kidnapping of her daughter in April 2010. As the agency properly noted, the kidnapping in April 2010 was not on account of a protected ground. The immigration judge found that the kidnapping, although unfortunate, did happen, but the details that the petitioner provided only on cross-examination regarding the anonymous phone call was not credible. This appears to be a factual assertion used to embellish her claim. And this Court has held that factual assertions that were not included in the asylum application can support an adverse credibility finding. Here, the petitioner failed to mention the anonymous phone call during direct examination in her written asylum application. And even though she claims that she did not personally receive these phone calls, and therefore should not be held accountable for the omission in her asylum application, she's requesting that this Court use the same phone call in order to determine that the kidnapping was, in fact, on account of a protected ground, which is her religion. The husband's affidavit, although Petitioner's Counsel claims that the affidavit did mention the phone call, there's no evidence of that. The petitioner's husband's affidavit did mention that they received phone calls, but not that these phone calls occurred after the kidnapping or were specifically related to the kidnapping. Therefore, the agency's conclusion that the kidnapping in 2010, again, although unfortunate, was not on account of a protected ground. In her testimony, the petitioner claimed that she did not know the identity of the kidnappers. And it wasn't until cross-examination that she indicated that there were individuals standing near the children who were dressed in Muslim attire. She never mentioned this any other time except on cross-examination when specifically asked about it. Even when asked during direct examination if she even witnessed the kidnapping, she indicated that she did not. Therefore, her argument that the kidnapping was on account of religion is nothing more than speculative. And the agency was proper in concluding that the kidnapping was not on account of a protected ground. The petitioner's other remaining incidents of mistreatment in Indonesia did not rise to the level of persecution. This court has held that the line between harassment and persecution is the line between nasty and barbaric, or alternatively, between wishing you were living in another country and actually fleeing to another country to escape the alleged persecution without any knowledge of being given refuge in that country. The phone calls just did not rise to the level of persecution and the agency was proper in holding that. Moving to her claim of well-founded fear of future persecution, the petitioner argues in her reply brief that the government has waived their rebuttable presumption of future persecution, but there is no presumption to rebut. As I previously just stated, there's no past persecution in this case. Petitioner also has the burden to demonstrate that her well-founded fear of future persecution was both subjectively and objectively reasonable, and she failed to do so here. This court has specifically rejected the disfavored group analysis that the Ninth Circuit has applied in its Chinese Christian Indonesian cases. Our case specifically referred to the Ninth Circuit opinion. I'm sorry? I said we specifically referred to the Ninth Circuit opinion. Yes, you do, and the decision is Salem v. Holder, I believe. You specifically say that your analysis is not sufficient or does not, as the Ninth Circuit's, does not require a lower standard of proof. You indicated in that case that the Ninth Circuit requiring a lower standard is not much different than your analysis of individualized risk. Now, as far as with the pattern or practice of persecution, this court has held that there is no pattern or practice of persecution of Chinese Christians in Indonesia. How long ago was that opinion? 2014, Your Honor, and that was in Salem v. Holder. This court in that case actually reviewed very similar evidence than what the petitioner submitted in this case. In that case, the court looked at the 2010 country report and the 2010 religious freedom report and determined that there's no evidence of pattern or practice of persecution of Chinese Christians in Indonesia. In fact, pattern and practice of persecution requires an extreme level of persecution because once a pattern or practice of persecution is established, that means that every member of that group may be eligible for relief. That's what this court indicated in Salem. The petitioner has not demonstrated the extreme level of persecution that is required for a pattern or practice of persecution. The 2010 country report indicates that the Indonesian government is in fact promoting tolerance of ethnic Chinese and Christians in its country. To answer your question, Your Honor, the 2010 religious freedom report actually indicates that there's 19 Protestants practicing in Indonesia, and those are often referred locally as Christians. There's 5 million Catholics practicing in the country as a whole. Therefore, there's no evidence... How many churches have been burned? I'm not quite sure, Your Honor. The Ninth Circuit opinion had a number of how many? Something in the number of 25 Christian churches have been burned? And the country report is not... So there's no really... that was an indication there's no antipathy towards Christians in Indonesia? In the Ninth Circuit's decision, yes, Your Honor. But here, although the country report decisions and the... I'm sorry, the country reports and the freedom report indicate that there is some discrimination going on in Indonesia, and the government is not denying that, but has the petitioner demonstrated that she herself would be targeted and persecuted if returned to Indonesia? The answer is no. Furthermore, there are numerous sizable communities in the country that are majority Christian. It's unfortunate that the petitioner experienced these incidents in her hometown, but there are other places in Indonesia where she would be able to practice her religion safely. As far as the petitioner's claim goes, she just has not demonstrated or presented sufficient credible evidence that she is, in fact, going to be persecuted if returned to Indonesia. And therefore, the court should deny the petition for review. If there are no more questions, I will submit on the brief. Okay. Thank you very much. Thank you. Ms. Ton. Just a few points in rebuttal, Your Honor. Your Honor raised the point that the Ninth Circuit opinion stated that 25 churches have actually been burned for practicing Christianity. That in itself is proof that there is persecution faced by the Christians that are minority in Indonesia. Furthermore, counsel just acquiesced to the fact that there is persecution that is faced by Christians in Indonesia. In the case itself, we see that... Didn't you have to know where those churches were? I'm sorry, Your Honor? Wouldn't you have to know where those churches were? They were in Indonesia, Your Honor, and I know that it's... But Indonesia is a collection of, I think, a couple of thousand islands, right? Correct, Your Honor. So if you had virulent discrimination against Christians and burning of churches in one island of Indonesia, that wouldn't make Christians... That wouldn't put Christians at risk all over the place, right? That is true, Your Honor, but what is it going to take for the petitioner to have her daughter be kidnapped a second time or be killed at the next time? But there are cases... I haven't seen them recently, but there are cases which say that if there are safe areas in the country which you come from, then you can be removed to that country even though there are areas where you'd be in great danger. So that's why I would have to know something about whether those 25 churches that burned down are all in one place where Christians ought to avoid or whether they're in Java, for example. Your Honor, I see my time is up, but I'd like to answer your question. The fact that the respondent met her burden by showing that the kidnapping occurred and the judge found her credible means that she has met her burden of past persecution. The burden then shifts to the government to prove that she could have moved to another area in Indonesia or that the government didn't protect her. The record is void of any type of argument that the government has made that she could move to another part of Indonesia. And when you don't make that argument, you acquiesce to the fact that she couldn't live in any other part of Indonesia. Okay, well, thank you. Thank you, Your Honor. And thank you to...